# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**HEATHER FRANKLIN**      **PLAINTIFF**

**v.**      **CIVIL ACTION NO. 4:23-cv-4-JMV**

**COMMISSIONER OF**
**SOCIAL SECURITY**      **DEFENDANT**

## ORDER

This matter is before the court on Plaintiff's complaint [1] for judicial review[1] of the Commissioner of the Social Security Administration's denial of an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The undersigned held a hearing on October 25, 2023. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. Having considered the record, the administrative transcript, the briefs

---

[1] The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

of the parties, the oral arguments of counsel and the applicable law, the undersigned finds the Commissioner's decision is supported by substantial evidence and that said decision should be affirmed.

## Statement of the Case

On September 23, 2020, Plaintiff filed for DIB and on October 7, 2020, for SSI, alleging a disability onset date of January 30, 2020. Tr. at 14. The application was denied initially on March 15, 2021, and upon reconsideration on September 7, 2021. Tr. at 14. Plaintiff filed a timely request for a hearing. The Administrative Law Judge ("ALJ") held a telephonic hearing on August 31, 2022, and issued an unfavorable decision in this cause on June 28, 2022. Tr. at 11, 14-28. The Appeals Council denied Plaintiff's request for review on November 16, 2022, thereby making the ALJ's decision the final decision of the Commissioner and the Social Security Administration for purposes of judicial review under the Social Security Act. Tr. at 6-8.

The ALJ evaluated Plaintiff's claims pursuant to the five-step sequential evaluation process. As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2026. Tr. at 17, Finding 1. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged disability onset date of April 1, 2020. Tr. at 17, Finding 2. At step two, the ALJ found that the Plaintiff had the following severe impairments: asthma, major depressive disorder, recurrent, moderate, anxiety, migraines, and Hashimoto's desease (20 CFR 404.1520(c) and 416.920(c)). Tr. at 17, Finding 3. At step three, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or equaled the criteria of an impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings). Tr. at 18, Finding 4.

The ALJ then assessed Plaintiff's RFC and found that she has the ability to perform a full range of work at all exertional levels but with the following limitations: the plaintiff can push and/or pull as much as she can lift and/or carry; can have occasional exposure to humidity, wetness, dust, odors, fumes, and pulmonary irritants and moderate exposure to noise; can perform jobs requiring only simple and routine tasks; can have occasional interaction with supervisors, coworkers, and the public; and can tolerate few if any changes in the work setting. Tr. at 21-25, Finding 5.

At step four, the ALJ found that Plaintiff is able to perform her past relevant work as a cleaner (DOT # 323.687-014). Tr. at 26, Finding 6.

Because the ALJ found that Plaintiff was able to perform his past work, the ALJ made the following alternative findings for step five. The ALJ found, after consulting with a Vocational Expert ("VE"), that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Tr. at 26-27, Finding 6. Finally, the ALJ found Plaintiff not disabled and denied her application for period of disability and DIB. Tr. at 27, Finding 7.

**Issue on Appeal**

In her brief on appeal, Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's migraine headaches. In particular, Plaintiff complains that the ALJ (1) failed to properly incorporate into his RFC any limitation concerning the migraines, and (2) improperly created his own lay opinion of Plaintiff's mental assessment.

As concerns the migraines, Plaintiff argues the ALJ did not evaluate the migraines under SSR 19-4p. Specifically, Plaintiff faults the ALJ for "not mention[ing] in the RFC the frequency, duration, intensity and consequence of these headaches." *See* Pl.'s Br. [16] at 12. In

support of her position, Plaintiff relies, in part, on testimony from the hearing before the ALJ, such as the following:

> Q Okay. Now, back to my original, what are the top reasons that you cannot work full-time if you know?
> A The migraines, the pain. I have to be away from lights and sound, generally laying down. I can't do that at work, and like the dizziness that I have, I'm slower. I can't move as fast because if I, you know, go down and get up, I'll probably get dizzy. If I move side to side too quickly, I can get dizzy, and the dizziness can be from probably what I call normal dizziness where I'm not going to fall to my whole world's spinning and I'm standing still or sitting still and everything's moving and I could fall.
> Q Okay.
> A It's one of those things where I'm scared to fall so.
> Q Have you hurt yourself by falling recently?
> A Thankfully, I've fallen, and I have not hurt myself thankfully.
> Q So, the migraines would be perhaps #1, what would be next in line that would cause - -
> A The Meniere's.
> Q I'm sorry, I missed that.
> A The Meniere's Disease, the dizziness from that.
> Q And how long has that been a problem? I know it wasn't a problem that we know of in early 2020.
> A I'm not entirely certain. I felt for probably two or three years before that I was getting dizzy and it was - - the dizziness was coming with the migraines and I was still having - - even when I didn't have a migraine, I thought they were migraine symptoms, but I was dizzy and nauseous and I thought, okay, maybe I'm getting a migraine or I had a migraine earlier. I'm still having these symptoms. So it was at least two or three years before that. I didn't know that I had the Meniere's Disease so I don't know if it's - -
> Q Right. Right.
> A - - both migraines and that or if it's just the Meniere's Disease.

Pl.'s Br. [16] at 7-8 (citing Tr. 47-49).

In addition to Plaintiff's own testimony from the hearing, Plaintiff points to the ALJ finding the consultative examiner Dr. Smith's assessment persuasive. Dr. Smith assessed Plaintiff's migraines as a severe impairment. From Dr. Smith's assessment:

> LIMITATIONS OF DAILY LIVING: Limitations are placed due to the aberration of vision, which requires glasses for all activities. She will require modification of any environmental activity. Driving a car, while possible, is not advisable. Her social and potential marital opportunities will be severely limited by existing ovarian and gynecological disease. Her associated problem of dealing with different individuals and crowds has a long history and will limit her vocational opportunities severely. ***The frequent occurrence of migraine headaches will interfere with all aspects of social and***

>     *vocational life.* The combination of various hormonal an neuropsychiatric abberations (sic) will most impact her ability to function in a diverse society.

Tr. at 489-91 (emphasis added).

Plaintiff contends that the RFC – despite including some limitations such as requirement of simple, routine tasks – does not grapple with the problems that the above testimony and assessment create. Namely, that Plaintiff would need "to be in a dark quiet place [which] would certainly prevent her from attending work" and that the migraines would cause Plaintiff to miss work.

In response, the Commissioner argues that the plaintiff has not provided medical evidence to support her contention that the ALJ erred with respect to the RFC and Plaintiff's migraines. See Def.'s Br. [23] at 12 (citing *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986)). The Commissioner argues that "Dr. Smith's statement regarding frequent migraines interfering with Plaintiff's social and vocational life arguably does not satisfy the regulatory definition of a 'medical opinion' evaluated under 20 C.F.R. §§ 404.1520c/416.920c." Def.'s Br. [23] at 12. Instead, Dr. Smith's statement relates to an area left to the purview of the Commissioner – a plaintiff's ability to perform regular and continuing work. Def.'s Br. [23] at 13 (citing 20 C.F.R. §§ 404.1520b(c) and (c)(3), 416.920b(c) and (c)(3)).

As for Plaintiff's argument that the ALJ improperly substituted his own lay opinion, Plaintiff argues that the ALJ found both Dr. Smith and Dr. Whalen's assessments persuasive but then disregarded their opinions by creating his own opinion of Plaintiff's mental assessments as follows:

>     In sum, after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. Despite the claimant's allegations of

> debilitating symptoms and restrictions, she received only routine conservative treatment for her severe impairments. Additionally, there is no indication that the claimant required emergency or aggressive treatment for her severe impairments or symptoms suggesting that the symptoms were not limited as expressed by the claimant and diminish the persuasion of those allegations. After a thorough review of the evidence of the record, including the claimant's allegations and testimony, forms completed at the request of Social Security, the objective medical findings, medical opinions, and other relevant evidence, the undersigned finds that the records support the residual functional capacity established in this decision.

Pl.'s Br. [16] at 13-14 (citing Tr. at 25).

The plaintiff contends that this "lay opinion" of the ALJ is tantamount to "playing doctor" by replacing the medical judgment of Drs. Smith and Whalen with his own judgment.

In response, the Commissioner argues that the ALJ is under no obligation to incorporate the statements of Drs. Smith and Whalen verbatim into the RFC. Instead, the ALJ was simply performing his function by interpreting the medical evidence and reviewing all relevant medical evidence to construct Plaintiff's RFC. The Commissioner further contends that Drs. Smith and Whalen's evidence is sufficiently accounted for in the RFC. For example, "[t]he ALJ sufficiently accounted for Dr. Whelan's evidence, including his statement that Plaintiff's 'physical problems contribute to her anxiety and depression,' by limiting Plaintiff to unskilled work involving only simple and routine tasks, 'few if any' changes in the work setting, and occasional interaction with supervisors, coworkers, and the public." Def.'s Br. at 5. As to Dr. Smith, the Commissioner argues that the limitations imposed in the RFC account for Dr. Smith's assessment of Plaintiff's headaches and environmental activity modification. Def.'s Br. at 5.

## Discussion

First, with respect to the migraines, the ALJ did incorporate and consider the migraines in Plaintiff's RFC. Per SSR 19-4p, once an ALJ determines that a person's headache disorder does not medically equal a listing at step three, the ALJ "must consider and discuss the limiting

effects of all impairments any related symptoms when assessing a person's RFC." SSR 19-4p, 2019 WL 4169635, at *7. Here, the ALJ found at step three that the migraines, either alone or in combination, did not meet or equal the criteria of an impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings). Tr. at 19. In the opinion, the ALJ indicated that "claimant received … no significant treatment or referral to neurology for headaches" and that the migraine headaches were controlled some by Imitrex, as noted in Dr. Smith's consultative examination. Tr. at 23. However, the state agency medical consultants found the migraines to be a severe impairment and found Plaintiff "should avoid concentrated exposure to extreme temperatures, wetness, humidity, noise, vibrations, fumes, odors, dusts, gases, and poor ventilation and hazards such as machinery and heights (Exhibits 1A, 3A, 5A, 7A)." These limitations are nonetheless expressed in the RFC, consistent with SSR 19-4p. As for Plaintiff's contention that the migraines are so debilitating that Plaintiff would miss work in a manner and fashion not contemplated by the ALJ, the ALJ pointed out that Plaintiff received only routine conservative treatment and the record does not reflect emergent or aggressive treatment. Dr. Smith's consultative exam in December 2020 reflects that the migraines occur about once a week if *untreated*. (emphasis added) Tr. at 487. However, Dr. Smith also indicated the use of Imitrex controls these migraines somewhat.

Secondly, as for the whether the ALJ improperly created his own lay opinion of Plaintiff's mental assessment, I find this argument unpersuasive. Plaintiff argues that the ALJ labeled Drs. Smith and Whelan's opinions persuasive but then did not "heed" them. Commissioner correctly points out that the limitations reflected in the RFC – requiring only moderate exposure to noise and occasional exposure to humidity, wetness, dust, fumes, and pulmonary irritants; only simple and routine tasks; few, if any, changes in work setting; and occasional interaction with supervisors, coworkers, and the public – show that the ALJ did

sufficiently account for Drs. Smith and Whelan's opinions. The ALJ's rejection of Amy Baskin's finding of only mild limitations, and instead finding that the plaintiff's level of functioning was further deteriorated than Baskin had assessed reinforces that the ALJ considered the record as a whole, and the limitations imposed in the RFC are supported by substantial evidence from the record.

Plaintiff also argues that the ALJ commenting on the treatment plan of Plaintiff was improper. The ALJ's comment that the plaintiff "received only routine conservative treatment for her severe impairments" is not the ALJ "playing doctor" but rather evaluating the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms in light of the entire evidentiary record. The Fifth Circuit has held that an ALJ may do just that – evaluate a claimant's subjective complaints and establish inconsistencies with the evidence as a whole. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994); *see also Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995). The ALJ was not engaged in evaluating the correctness of Plaintiff's treatment, but rather was evaluating Plaintiff's subjective testimony against the medical record before him.

## Conclusion

For the reasons stated above, the Court finds that the ALJ's June 28, 2022, decision is affirmed.

**SO ORDERED** this, the 22nd day of November, 2023.

/s/ Jane M. Virden_____
**United States Magistrate Judge**